John **VOISIN**

v.

**GEORGIA GULF CORPORATION**

No. CIV.A.00–0666–B–M1.

United States District Court, M.D. Louisiana.

Nov. 4, 2002.

Dan Michael Scheuermann, Baton Rouge, LA, for plaintiff.

Murphy James Foster, III, John T. Andrishok, Breazeale, Sachse & Wilson, Baton Rouge, LA, for defendant.

## RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the defendant Georgia Gulf's Motion for Reconsideration[1] of the Court's denial of the defendant's previous Motion for Summary Judgment.[2] For the reasons which follow,

---

1. Rec. Doc. No. 102

2. Rec. Doc. No. 42

the Motion for Reconsideration is granted, the original Ruling[3] on the Motion for Summary Judgment shall be vacated, and the defendant's Motion for Summary Judgment shall be granted.

## I. Introduction

The plaintiff was employed by Georgia Gulf as a Chlorate Operator from September 18, 1991 until August 9, 1999. The plaintiff injured his knee in October of 1997 and, following surgery, returned to work in April of 1998. Plaintiff injured his back twice, first in November of 1997 and then again in July of 1998.

Plaintiff claims that, due to the continued problems with his back and the physically demanding requirements of the Chlorate Operator position, he requested that Georgia Gulf accommodate him, specifically by assigning him to a position as a Brine Operator, Chlorate Operator supervisor, or Senior Technician. He alleges that Georgia Gulf refused his accommodation requests, and, therefore, violated the Americans with Disabilities Act ("ADA").[4]

The plaintiff filed a charge against the defendant with the Equal Employment Opportunity Commission ("EEOC") on January 7, 2000, stating: "On approximately April 13, 1999, and repeatedly I was denied an accommodation/light duty in my position. On August 9, 1999, I was discharged from my job...."[5]

The defendant claims that all of the alleged accommodation requests made by the plaintiff were unreasonable as a matter of law under the ADA. Defendant argues that there is no evidence which would support the allegation that plaintiff was retaliated or discriminated against based upon his alleged disability. Furthermore, defendant claims that the plaintiff was not a "qualified individual with a disability"[6] as defined by the ADA because the total and permanent nature of his disability precluded him from employment in any capacity during the alleged discrimination period. The defendant also claims that plaintiff's allegations are confined to the time period set forth in the EEOC complaint because any pre-March of 1999 claims of failure to accommodate are barred by the applicable three hundred day statute of limitations.

This Court originally denied the defendant's Motion for Summary Judgment on July 12, 2002 because the court believed that there was "a genuine issue of material fact concerning what constitutes the relevant time period for the purposes of plaintiff's ADA claims."[7]

Based on another review of the evidence and new jurisprudence before the Court, the Court is satisfied that summary judgment in favor of the defendant is now proper.

## II. Law

### A. Prescription

According to *National Railroad Passenger Corporation v. Morgan,*[8] claims of discrimination under the ADA concerning discrete acts which occurred more than three hundred days before the filing of an EEOC charge are prescribed. As will be discussed in more detail later in this opinion, plaintiff filed his EEOC claim on January 6, 2000. Thus, any claims which occurred prior to March 12, 1999 are prescribed.

---

3. Rec. Doc. No. 100

4. 42 U.S.C. § 12101 *et seq.*

5. Rec. Doc. No. 45 Exhibit E

6. 42 U.S.C. § 12111(8)

7. Rec. Doc. No. 100

8. 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)

### B. Prima Facie Case Under the Americans with Disabilities Act (ADA)

The ADA was enacted to protect qualified individuals with disabilities from discrimination in the workplace. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." [9]

With respect to an individual, the term "disability" means any of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." [10]

The term "essential functions of the job" is defined as "the fundamental job duties of the employment position the disabled employee holds or desires." [11] It is unreasonable to require an employer to exempt an employee from performance of an essential function of the job. [12] The ADA does not require an employer to promote a disabled employee. [13]

"Reasonable accommodation" is defined in pertinent part as, "job restructuring, part-time or modified work schedules, reassignment to a vacant position...." [14] The plaintiff must show that a vacant position exists and that the plaintiff is qualified for that position. [15] Furthermore, an employer cannot be required to create "light duty" positions where none previously existed in order to accommodate disabled employees. [16]

■ A plaintiff may prove a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the plaintiff may establish a prima facie case of discrimination by showing that: (1) he suffers from a disability; (2) he is otherwise qualified for the job; (3) he was subject to some adverse employment action; and (4) he was replaced or treated less favorably than non-disabled employees. [17] Plaintiff has failed to meet the standards to recover on an ADA claim as will be discussed in more detail later in this opinion.

### C. Social Security Act

■ When the Social Security Administration (SSA) determines whether a claimant is disabled, the possibility of "reasonable accommodation" is not taken into account as is required under the ADA. Therefore, an individual's assertion to the SSA that he is "totally disabled" does not, by itself, preclude that individual from stating a claim under the ADA. Instead, to survive summary judgment, the ADA claimant "must explain why that [Social Security Disability Insurance] contention is consistent with [his] ADA claim that [he] could 'perform the essential

---

9. 42 U.S.C. § 12111(8); See Giles v. General Electric Co., 245 F.3d 474, 483 (5th Cir.2001); Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258 (5th Cir.2001).

10. 42 U.S.C. § 12102(2).

11. 29 C.F.R. § 1630.2(n)(1).

12. See Jones v. Kerrville State Hospital, 142 F.3d 263 (5th Cir.1998).

13. See Allen v. Rapides Parish School Board, 204 F.3d 619 (5th Cir.2000).

14. 42 U.S.C. § 12111(9)(B)

15. Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir.1996).

16. See Turco v. Hoechst Celanese Corp., 101 F.3d 1090 (5th Cir.1996).

17. See Daigle v. Liberty Life Ins. Co., 70 F.3d 394 (5th Cir.1995); Taylor v. Principal Financial Group, Inc., 93 F.3d 155, (5th Cir.1996), cert. denied, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

functions' of [his] previous job, at least with 'reasonable accommodation.' " [18] Considering the evidence submitted in support of the Social Security claim and the disability claim, plaintiff is precluded from recovery under the ADA. The Court now turns to a discussion of the facts of this case.

### III. Prescription

Under *National Railroad Passenger Corporation v. Morgan,*[19] all of the plaintiff's claims of discrimination which occurred more than 300 days before the filing of his EEOC charge are prescribed. Therefore, because Voisin filed his EEOC claim on January 6, 2000, any acts of discrimination which occurred prior to March 12, 1999 are time barred. According to Voisin's EEOC complaint,[20] the claims of discrimination in this case begin on April 13, 1999 and end on the date of his termination, which occurred on August 9, 1999.

In the alternative, this Court finds that, even if the plaintiff's claims are not prescribed, summary judgment should be granted on all of plaintiff's claims for the entire period for the reasons which follow.

### IV. Discussion Regarding Pending Claims

#### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [21] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [22] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [23] If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [24]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[25] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[26] Factual controversies are to be resolved in

---

**18.** *Cleveland v. Policy Management Systems Corporation,* 526 U.S. 795, 798, 119 S.Ct. 1597, 1600, 143 L.Ed.2d 966 (1999).

**19.** 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

**20.** Rec. Doc. No. 99 Exhibit 1

**21.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

**22.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

See also *Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

**23.** *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553).

**24.** *Little,* 37 F.3d at 1075.

**25.** *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996).

**26.** *Little,* 37 F.3d at 1075; *Wallace,* 80 F.3d at 1047.

favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[27] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[28] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[29]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[30]

### B. Voisin Is Too Disabled To Be a "Qualified Individual With a Disability" Under the ADA

■ After reviewing the evidence in this case, this Court agrees with the determination[31] made by the EEOC that, under the facts of this case, Voisin is not a qualified individual with a disability under the provisions of the ADA. This is amply demonstrated by the evidence submitted by the plaintiff on his Social Security claim and the statements he and doctors made in connection with his disability insurance claim. The Court now turns to a discussion of the statements and other evidence submitted in connection with the Long Term Disability Insurance claim.

### 1. Representations Made to Long Term Disability Insurance Providers

During the time period corresponding to Voisin's ADA discrimination claim, Voisin and his treating orthopaedic surgeon, Dr. Jack F. Loupe, claimed that Voisin was totally disabled in many of the applications submitted to long term disability insurance companies for benefits under the policies. Portions of these claims are set forth below.[32]

On March 22, 1999, in an application[33] filed on behalf of Voisin for disability benefits from Hartford Life and Accident Insurance Company, Dr. Loupe checked, "yes" when asked, "Is patient now totally disabled?". In addition, when asked, "Would job modification enable patient to work with impairment?", Dr. Loupe checked, "no," and wrote, "not at this job."

Dr. Loupe responded that Voisin was totally disabled. The language of the policy issued by Hartford Life and Accident Insurance Company to Georgia Gulf

---

27. *Wallace,* 80 F.3d at 1048. *See also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996).

28. *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing,* 70 F.3d 26 (5th Cir.1995).

29. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

30. *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.

31. Patricia T. Bivins, District Director of the EEOC, stated, "it is also clear from examination of the medical records and other documents that [Mr. Voisin] could not perform the essential functions of his job with or without reasonable accommodation. Mr. Voisin does not meet the complete definition of a qualified individual with a disability under the ADA; therefore [Mr. Voisin] is not a qualified individual with a disability." Rec. Doc. No. 89 Exhibit E.

32. The claim forms referenced herein by Voisin and Dr. Loupe to insurance providers are not exhaustive of all forms completed by Voisin and Dr. Loupe.

33. Rec. Doc. No. 45 Exhibit 4 of Exhibit A

Corporation defines totally disabled and partially disabled as follows: "Totally Disabled means you are prevented by Disability from doing all the material and substantial duties of your own occupation." "Partially Disabled means you are receiving or entitled to benefits under this Plan while Totally Disabled, but: (1) you are able to perform some but not all of the material and substantial duties of your or any occupation on either a full-time or part-time basis . . . ."

In his deposition,[34] Dr. Loupe was asked what he meant when he checked "No" in response to the following question on the disability claim: "Would job modification enable patient to work with impairment?" Dr. Loupe answered: "That meant that at his job, there was no modification that would allow him to be able to work."

Dr. Loupe's failure to testify that Voisin could perform his occupation with modification indicates that Dr. Loupe believed that Voisin was too disabled to work. Also convincing is that on March 31, 1999, only nine days later, in a disability insurance application[35] to American Banker's Insurance Group, the following question and answer were set forth: "Give Exact Dates of Total Disability (Unable to Work)." Dr. Loupe wrote: from "March 8, 1999" to "undetermined," and checked, "any occupation" instead of "his/her occupation." On the same form, when characterizing "Physical Impairments," Dr. Loupe checked, "Class 5—Severe limitation of functional capacity; incapable of minimum (sedentary) activity." Also on March 31, 1999, in a disability claim form[36] to American Security Group, Dr. Loupe answered

from "March 8, through undetermined," in response to the question, "How long was or will patient be continuously totally disabled (unable to work)?".

These representations of total disability from gainful employment continued throughout the rest of the alleged discrimination periods relevant to this case. In a disability claim form[37] dated May 12, 1999, in response to the question, "How long was or will patient be continuously totally disabled (unable to work)?", Dr. Loupe answered, from "March 8, 99" through "undetermined." In a continuing disability claim form[38] dated June 16, 1999, in response to, "Give Exact Dates of Total Disability (Unable to Work)," Dr. Loupe responded, from "3/4/99" to "undetermined." It is important to note that Dr. Loupe again checked "Any Occupation" instead of checking, "His/Her Occupation."

On July 14, 1999, in a continuing disability report[39] to Associates Financial Life Insurance, Voisin checked, "Yes" in answering the question, "Do you remain totally disabled and unable to work?". Also, on the same form, Dr. Loupe certified that Voisin "Continues to be Totally Disabled from Degenerative Disc Disease," and noted, "disability likely to be permanent for his job."

In an Associates Financial Life Insurance continuing disability report[40] dated August 9, 1999, the day Voisin was terminated from Georgia Gulf, Voisin checked, "Yes," in response to "Do you remain totally disabled and unable to work?". Also, Dr. Loupe again certified that Voisin

---

34. Rec. Doc. No. 89 Exhibit B, p. 12, lns. 7–17

35. Rec. Doc. No. 45 Exhibit 5 of Exhibit A

36. Rec. Doc. No. 45 Exhibit 6 of Exhibit A

37. Rec. Doc. No. 45 Exhibit 10 of Exhibit A

38. Rec. Doc. No. 45 Exhibit 16 of Exhibit A

39. Rec. Doc. No. 45 Exhibit 20 of Exhibit A

40. Rec. Doc. No. 45 Exhibit 21 of Exhibit A

"Continues to be Totally Disabled from Degenerative Disc Disease."

### 2. Representations to the Social Security Administration

In addition to their statements to insurance providers, Voisin and Dr. Loupe asserted in applications for Social Security benefits that Voisin was totally disabled and unable to work.

In Voisin's Request for Reconsideration from the Social Security Administration [41] on October 26, 1999, Voisin stated in support of his request that: "I am unable to sustain work activity." Again, in Voisin's Request for a Hearing by an Administrative Law Judge,[42] Voisin wrote, "I am unable to sustain work activity."

On the form entitled, "Claimant's Statement when Request for Hearing is Filed and the Issue is Disability",[43] Voisin stated, "I have barely any social life because of my pain. I'm unable to bathe on my own—and try to take a shower on my own but very carefully. My sons do the yard work—I had to stop hunting completely."

Medical evidence submitted by Dr. Loupe is also convincing. In a Medical Source Statement to the Social Security Administration[44], Dr. Loupe checked that Voisin was "Unable to work on a day-to-day sustained basis in full-time employment at any/all levels of exertion." Further, in a Medical Source Statement of Ability to Do Work–Related Activities to the Department of Social Services[45], Dr.

Loupe wrote that Voisin has impairments, including coughing and sinus trouble, as a result of working around dusts, vibrations, fumes, odors, chemicals and gases. Finally, in Dr. Loupe's written statement[46] to P. Patty at the Department of Social Services, Office of Family Support/Disability Determinations, Dr. Loupe stated, "[Voisin] is totally disabled from gainful employment... This gentleman is going to be disabled for years to come."

This Court recognizes that, at times, Dr. Loupe and Voisin's statements to insurance providers and the Social Security Administration are similar to those that the Supreme Court held stated an ADA claim in *Cleveland v. Policy Management Systems Corporation.*[47] However, the assertions of total disability made in this case are much more factually conclusive than the statements[48] made to the Social Security Administration by the plaintiff in *Cleveland.* Furthermore, the Supreme Court in *Cleveland* characterized the statements made by the plaintiff in that case to be legal conclusions under the Social Security Act and distinguished those legal conclusions from other factual conclusions, stating,

> "This case does *not* involve... directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.' An [Social Security Administration] representation of total disability differs from a purely factual statement in that it often implies a

---

41.  Rec. Doc. No. 83 Exhibit E

42.  Rec. Doc. No. 83 Exhibit A

43.  Rec. Doc. No. 83 Exhibit D

44.  Rec. Doc. No. 45 Exhibit 38 of Exhibit A

45.  Rec. Doc. No. 89 Exhibit M

46.  Rec. Doc. No. 45 Exhibit 43 of Exhibit A

47.  526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)

48.  The plaintiff in *Cleveland* stated to the Social Security Administration: "I am unable to work due to my disability," "I continue to be disabled," and that she "could no longer do the job" in light of her "condition." *Id.,* 526 U.S. at 799, 119 S.Ct. at 1600.

context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.' And our consideration of this latter kind of statement consequently leaves the law related to the former, purely factual, kind of conflict where we found it."[49]

Voisin and Dr. Loupe's factual assertions of total disability go beyond the total disability requirements for Social Security Act purposes. They eliminate the possibility that Voisin could perform the essential functions of his job with or without reasonable accommodation as required to state an ADA claim. In short, the medical evidence submitted in this case to the disability insurers and Social Security left no doubt that Voisin was totally disabled and could not perform any function of his job. The medical evidence also establishes that no modification of the job responsibilities would permit plaintiff to return to work at defendant's plant.

### 3. Reasonable Accommodation

■ Even if Voisin is a qualified individual with a disability, he has not established that Georgia Gulf failed to reasonably accommodate him for several reasons. First, medical evidence provided by Dr. Loupe establishes that Voisin cannot work around dust, vibrations, fumes, odors, chemicals and gases due to his coughing and sinus trouble.[50] Inevitably, Voisin would be affected by such irritants regardless of where he worked at the Georgia Gulf facility.

The weight of the evidence also confirms that there are no modifications to the Chlorate Operator position or vacancies in any "light duty" positions that could be considered as a reasonable accommodation. This Court finds that Georgia Gulf could not reasonably accommodate the plaintiff in his Chlorate Operator position because it would have required all essential job functions to be removed and would be unreasonable as a matter of law. Furthermore, Dr. Loupe testified in his deposition that there were no modifications to this position that would allow the plaintiff to continue in that capacity.[51]

Georgia Gulf's claim that the plaintiff would need a "light duty" position is consistent with both the medical evidence presented by Dr. Loupe and the statements by Voisin in this case. Although the plaintiff disputes that he ever requested a "permanent light duty" position, he did make statements that he would require "light duty for the rest of my life," and "for the next 23 years."[52] Georgia Gulf denies that any permanent "light duty" positions have ever existed at their workplace.[53] Moreover, even if Georgia Gulf did have "light duty" positions, the plaintiff has not proved that any vacancies in "light duty" or other positions existed contemporaneously with his accommodation requests. There were no vacant Brine Operator positions[54] or Senior technician positions,[55] and there is no Chlorate Operator trainer job classification at Georgia Gulf.[56]

**49.** *Cleveland,* 526 U.S. at 802, 119 S.Ct. at 1601–1602.

**50.** Rec. Doc. No. 89 Exhibit M

**51.** Rec. Doc. No. 89 Exhibit B, p. 12, lns. 7–17

**52.** Rec. Doc. No. 87 Exhibit G, p. 2; Exhibit H, p. 1

**53.** Rec. Doc. No. 45 Exhibit G

**54.** Rec. Doc. No. 45 Exhibit D, Exhibit G

**55.** Rec. Doc. No. 45 Exhibit G

**56.** Rec. Doc. No. 45 Exhibit D, Exhibit G

This Court finds that there was no possibility of reasonable accommodation at the Georgia Gulf facility for Voisin. Even assuming there was, the weight of the evidence as detailed above clearly establishes that Voisin was totally and permanently disabled from gainful employment with or without any accommodations. The medical evidence is overwhelming that Voisin is totally disabled and unable to work. While it is true that the granting of Social Security benefits does not preclude the plaintiff from seeking benefits under the ADA, the evidence submitted in support of the Social Security claim and disability benefits clearly shows plaintiff is totally disabled and unable to perform any of the duties of his employment. The extensive nature of plaintiff's disability precludes him from being a qualified individual with a disability under the ADA.

### V. Conclusion

For the reasons set forth above, the Court finds that the plaintiff's claims of discrimination prior to March 12, 1999 are prescribed. The Court further finds that the plaintiff was permanently and totally disabled at all relevant times such that he was not a "qualified individual with a disability" under the ADA. The Court further finds that there was no possibility of a reasonable accommodation for the plaintiff at the Georgia Gulf facility.

Therefore:

IT IS ORDERED that defendant's motion for summary judgment be granted.

IT IS FURTHER ORDERED that judgment shall be entered in favor of defendant Georgia Gulf Corporation, dismissing plaintiff's suit at his cost with prejudice.

### JUDGMENT

For written reasons assigned:

IT IS ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED AND ADJUDGED that judgment is entered in favor of defendant Georgia Gulf Corporation, dismissing plaintiff's suit at his cost with prejudice.